

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
October 8, 2020 05:04 PM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 993606

**WEXFORD PLACE INC**                    A 2003570

vs.

**GENERAL ELECTRIC CREDIT UNION**

## FILING TYPE:  INITIAL FILING (IN COUNTY) WITH NO JURY DEMAND

## PAGES FILED: 20

EFR200



VERIFY RECORD

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| WEXFORD PLACE, INC. | ) | CASE NO.: _____ |
| 4750 Ashwood Drive | ) | |
| Blue Ash, OH 45241, | ) | JUDGE _____ |
| | ) | |
| WEXFORD CARE CENTER, INC. | ) | |
| 3875 E. Galbraith Road | ) | **COMPLAINT** |
| Cincinnati, OH 45236, | ) | |
| | ) | |
| DIVERSIFIED HEALTH PARTNERS, | ) | |
| Diversified Health Partners, LLC Attn: Shelly | ) | |
| Szarek-Skodny | ) | |
| 835 Sharon Drive | ) | |
| Westlake, OH 44145 | ) | |
| | ) | |
| SOCIAL ROW TRANSITIONAL CARE, INC. | ) | |
| John T. Hillyer, Receiver | ) | |
| 250 W. Social Row Road | ) | |
| Washington Township, Ohio 45458-4404 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HILLYER GROUP, LLC | ) | |
| 3002 Overlook Road | ) | |
| Silver Lake, Ohio 44224 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL ELECTRIC CREDIT UNION, | ) | |
| 10485 Reading Road | ) | |
| Cincinnati, OH 45241 | ) | |
| | ) | |
| Defendant. | ) | |

**NOW COMES** Plaintiffs Wexford Place, Inc. ("Wexford Place"), Wexford Care Center,

Inc. ("Wexford Care" and together with Wexford Place, the "Wexford Entities"), Shelly Szarek-

Skodny of Diversified Health Partners, the duly appointed receiver for the Wexford Entities,

Social Row Transitional Care, Inc. ("Social Row") and John T. Hillyer of Hillyer Group, LLC

the duly appointed receiver for Social Row, (collectively, "Plaintiffs"), by and through their

1

undersigned counsel, and for their Complaint against General Electric Credit Union

("Defendant"), state the following:

## **PARTIES**

1. This is an action brought by the court appointed receivers for the Plaintiffs for the

release or credit of Paycheck Protection Program loans that General Electric Credit Union has

offset and withheld from Plaintiffs due to third-party obligations.

2. Plaintiff Wexford Place, Inc. is an Ohio Limited Liability Corporation.

3. Wexford Place operates a 162 licensed bed nursing home at 3889 E. Galbraith

Road, Cincinnati, Ohio 45236.

4. Plaintiff Wexford Care Center, Inc. in an Ohio Limited Liability Corporation.

5. Wexford Care Center operates a 73 licensed bed nursing facility located at 3875

E. Galbraith Road, Cincinnati, Ohio 45236.

6. Social Row operates a 100 licensed bed skilled nursing facility located at 250 W.

Social Row Road, Washington Township, Ohio 45458-4404.

7. Pursuant to a June 12, 2020 Agreed Order entered by Judge Patrick T.

Dinkelacker, in Hamilton  County Case No. A200002171 (the "WE Order"),The Wexford

Entities are currently overseen by a receiver, Shelly Szarek-Skodny of Diversified Health

Partners (the "WE Receiver").

8. Pursuant to a September 9, 2020 Amended Order entered by Judge Patrick T.

Dinkelacker, in Hamilton  County Case No. A 2002019 (the "SR Order" and together with the

WE Order, the "Orders"), Social Row is currently overseen by John T. Hillyer of Hillyer Group

as receiver (the "SR Receiver").

9.      Pursuant to the Orders, the Receivers are empowered to institute ancillary proceedings to preserve and protect the assets of the Wexford Entities and Social Row, respectively, and to institute and prosecute lawsuits for the collection of other funds.

10.      Defendant General Electric Credit Union ("GECU") is a state charted credit union with its principal place of business at 10485 Reading Road, Cincinnati, Ohio 45241.

## VENUE AND JURISDICTION

11.      This court has jurisdiction over the complaint pursuant to Ohio Revised Code Section 2305.01 *et seq.*

12.      Venue is appropriate in this case because the some or all of the transactions or occurrences occurred in Hamilton County.

## FACTS

13.      Plaintiffs incorporate the proceeding paragraphs by reference as if fully rewritten herein.

14.      On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act), Pub. L. 116-136) which included the Paycheck Protection Program ("PPP"), Pub. L. 116-136, §1102.

15.      Under the PPP, financial institutions like GECU were given the opportunity to issue fully guaranteed government loans to small businesses to help cover payroll, employee healthcare benefits, mortgage interest, business rent, and business utility payments (collectively referred to as "Eligible Expenses") Pub. L. 116-136, §1102(a)(2)(F).

16.      Under the PPP, participating lenders like GECU received processing fees from the United States Small Business Administration ("SBA") ranging from one (1) to five (5) percent of the loan amount. Pub. L. 116-136, §1102(a)(2)(P).

3

17. Under the PPP, borrowers who use funds for Eligible Expenses are eligible to have the entire amount of the loan forgiven; borrowers who do not use the funds for Eligible Expenses are required to repay portions of the loan that are used for other purposes at a one-percent (1%) interest rate.

18. Wexford Care Center submitted an application to GECU for a PPP loan on or around April 4, 2020 ("WCC PPP Application").

19. In the WCC PPP Application that was submitted to GECU, Wexford Care Center was required to certify that the PPP funds would be used for Eligible Expenses and that the PPP funds were necessary to support Wexford Care Center's ongoing operations.

20. The WCC PPP Application indicated that Wexford Care Center had 75 employees and an average monthly payroll of $159,149.

21. On or around April 17, 2020, Wexford Care Center was approved for SBA Loan No. 8321077001 in the amount of $397,800, and GECU was the lender ("WCC PPP Loan").

22. In conjunction with the WCC PPP Loan, Wexford Care Center executed an SBA note ("WCC Note") on April 17, 2020.

23. The WCC Note provide that repayment of the WCC PPP Loan would be at 1% a year, and the first payment would be deferred by 6 months.

24. Upon information and belief, pursuant to the terms of the PPP, GECU has received or will receive a processing fee of approximately $11,934 in connection with the WCC PPP Loan.

25. Social Row submitted an application to GECU for a PPP loan on or about April 4, 2020 (the "SR PPP Application").

4

26.     In the SR PPP Application that was submitted to GECU, Social Row was required to certify that the PPP funds would be used for Eligible Expenses and that the PPP funds were necessary to support Social Row's ongoing operations.

27.     The SR PPP Application indicated that Social Row had 25 employees and an average monthly payroll of $100,000.

28.     On or around April 17, 2020, Social was approved for an SBA loan in the amount of $250,000, and GECU was the lender ("SR PPP Loan").

29.     In conjunction with the SR PPP Loan, Social executed an SBA note ("SR Note") on or about April 17, 2020.

30.     The SR Note provides that repayment of the SR PPP Loan would be at 1% a year, and the first payment would be deferred by 6 months.

31.     Upon information and belief, pursuant to the terms of the PPP, GECU has received or will receive a processing fee in connection with the SR PPP Loan.

32.     Social Row did not enter into a collateral agreement with GECU.

33.     Social Row does not have any other loan or account with GECU other than its PPP loan.

34.     Wexford Place submitted an application to GECU for a PPP loan on or around April 4, 2020 ("WP PPP Application").

35.     In the WP PPP Application that was submitted to GECU, Wexford Place was required to certify that the PPP funds would be used for Eligible Expenses and that the PPP funds were necessary to support Wexford Place's ongoing operations.

36.     The WP PPP Application indicated that Wexford Place had 25 employees and an average monthly payroll of $222,096.

5

37. On or around April 17, 2020, Wexford Care Place was approved for SBA Loan No. 8323907005 in the amount of $555,200, and GECU was the lender ("WP PPP Loan").

38. In conjunction with the WP PPP Loan, Wexford Place executed an SBA note ("WP Note") on April 17, 2020.

39. The WP Note provide that repayment of the WP PPP Loan would be at 1% a year, and the first payment would be deferred by 6 months.

40. Upon information and belief, pursuant to the terms of the PPP, GECU has received or will receive a processing fee of approximately $16,656 on connection with the WP PPP Loan.

41. Neither Wexford Place nor Wexford Care Center entered into a collateral agreement with GECU.

42. Neither Wexford Place nor Wexford Care Center have any other loan or account with GECU besides their respective PPP loans.

43. Prior to the Receiver's appointment, the Plaintiffs were managed by Premier Health Care Management, Inc., an Ohio Corporation ("Premier").

44. Premier managed eight (8) other skilled nursing facilities.

45. Premier and seven (7) of the other nursing facilities it operates were placed in receivership by agreed order on June 3, 2020, in *Huntington National Bank as Administrative Agent v. Premier Health Care Management, Inc, et al*, Case No. A2002027, Hamilton County Court of Common Pleas.

46. As manager of the Plaintiffs, Premier arranged for the payment of payroll, rent, and other expenses of the businesses.

47. Premier directed GECU to distribute the PPP loan proceeds into a specific GECU account that was managed by Premier, and Premier held the funds on behalf of the Plaintiffs in the Premier GECU Business Checking Account.

48. On or around April 18, 2020, GECU deposited $397,800 for the Wexford Care Center PPP loan into the Premier GECU Business Checking Account.

49. On or around April 18, 2020, GECU deposited $555,200 for the Wexford Place PPP loan into the Premier GECU Business Checking Account.

50. On or about April 18, 2020, GECU deposited 250,000 for the SR PPP Loan into the Premier GECU Business Checking Account.

51. According to a summary of accounts prepared by Premier, between April 18, 2020, and May 20, 2020, Wexford Care Center paid $137,726.86 to cover payroll and business rent expenses using the PPP loan proceeds, leaving a net balance of $260,073.14 in Wexford Care Center PPP Loan proceeds in the Premier GECU Business Checking Account.

52. According to a summary of accounts prepared by Premier, between April 18, 2020 and May 20, 2020, Wexford Place paid $217,447.49 to cover payroll and business rent expenses using the PPP loan proceeds, leaving a net balance of $337,752.5 in Wexford Place PPP Loan proceeds in the Premier GECU Business Checking Account

53. According to a summary of accounts prepared by Premier, between April 18, 2020 and May 20, 2020, Social Row paid payroll and business rent expenses using the PPP loan proceeds, leaving a net balance of $66,243.85 in SR PPP Loan proceeds in the Premier GECU Business Checking Account.

54. On or around May 20, 2020, GECU froze all accounts related to Premier.

7

55.     GECU then offset against the Premier accounts and took possession of all funds therein.

56.     Upon information and belief, GECU's offset was due to alleged defaults on other loan agreements by Premier and other Premier managed entities – not the Plaintiffs.

57.     The only agreement between the Plaintiffs and GECU are the PPP Notes.

58.     The PPP funds were distributed by GECU into GECU accounts which were held by Premier.

59.     GECU knew, or should have known, that the funds it had placed in the Premier Account(s) were the Plaintiffs' funds.

60.     Wexford Place had not used $337,752.51 of its $555,200 PPP loan when GECU "offset" against Wexford Place's PPP funds.

61.     Wexford Care Center had not used $260,073.14 of its $397,800 PPP loan when GECU "offset" against Wexford Care Center's PPP funds.

62.     Social Row had not used $66,243.85 of its $250,000 PPP loan when GECU "offset" against Social Row's PPP funds.

63.     Plaintiffs require access and use of the PPP loans in order to meet their business obligations.

64.     Because GECU withheld the PPP funds, Plaintiffs have been required to use alternative sources in order to meet payroll and business rent expenses since the Receiver was appointed.

65.     On August 20, 2020, Jason Leyda, Treasury Management Administrator for GECU sent the Receiver an e-mail indicating that "GECU provided both Wexford CC and Wexford Place financing through the SBA's Paycheck Protection Program back in April,

2020. These loans can be forgiven by the SBA by proving that these entities continued to have payroll expenses during this pandemic (as well as other qualified expenses) over a certain amount of time. We have started to collect documentation from our PPP recipients to begin this forgiveness phase."

66. The Receiver requested that GECU provide a copy of the distribution into the accounts, date, time accounts.

67. On September 4. 2020, GECU responded that it was turning the matter over to legal counsel.

68. On or about September 10, 2020, GECU provided bank statements reflecting that the PPP loans were been deposited on April 20, 2020.

69. The bank statements provided by GECU included descriptions of the deposits and withdrawals, and specifically identified which entries were PPP associated and for which facility.

70. On September 11, 2020, counsel for the Receiver sent a letter to counsel for GECU demanding that GECU release the remaining withheld PPP funds.

71. On September 22, 2020, counsel for GECU responded indicating that it would not release the remaining PPP funds and claiming that "GECU is owed $953,200 plus accruing interest and costs from the Wexford Entities."

72. GECU asserted that the PPP loans were improperly obtained by the Wexford Entities. Upon information and belief, GECU is taking the same positions with respect to Social Row.

73. GECU also asserts and that the Wexford Entities are not entitled to their PPP funds because they do not have deposit accounts with GECU. Upon information and belief, GECU is taking the same position with respect to Social Row.

74.     Upon information and belief, GECU itself originated and then deposited the PPP loan funds for the Plaintiffs into the Premier account(s).

75.     GECU approved loans to the Plaintiffs.

76.     GECU originated government backed loans that were supposed to be used for Eligible Expenses.

77.     GECU deposited those PPP funds into a GECU account.

78.     GECU offset all funds within those accounts before the Plaintiffs were able to use the funds for payroll and rent.

79.     Despite the Plaintiffs' demands, GECU refuses to distribute the remaining PPP funds and claims that the entire loan amount is in default- even though it has seized approximately two-thirds of the PPP funds.

80.     GECU's seizure of the PPP funds has prevented the Plaintiffs from utilizing the funds for Eligible Expenses.

## FIRST CAUSE OF ACTION
## (Conversion of Wexford Care Center's PPP Loan)

81.     Plaintiffs incorporate the preceding paragraphs by reference as if fully rewritten herein.

82.     Wexford Care Center applied for and received the WCC PPP Loan in the amount of $397,800. The funds from the WCC PPP Loan were deposited into a GECU account.

83.     The funds from the WCC PPP Loan are the legal property of Wexford Care Center.

84.     Wexford Care Center has used $137,726.86 of the funds from the WCC PPP Loan for Eligible Expenses.

85. Without any legal right to do so, GECU has seized the remaining $260,073.14 of the funds from the WCC PPP Loan and has exercised dominion and control over the remaining funds.

86. Wexford Care Center has demanded that WECU return the remaining funds from the WCC PPP Loan.

87. GECU has refused to return the remaining funds from the WCC PPP Loan.

88. Wexford Care Center has been damaged by GECU's actions in that it has not had access to the WCC PPP Loan funds and has not been able to utilize the funds for Eligible Expenses which will result in an obligation to repay the funds.

## SECOND CAUSE OF ACTION
## Conversion of Wexford Place's PPP Loan

89. Plaintiffs incorporate the preceding paragraphs by reference as if fully rewritten herein.

90. Wexford Place applied for and received the WCC PPP Loan in the amount of $555,200. The funds from the WP PPP Loan were deposited into a GECU account.

91. The funds from the WP PPP Loan are the legal property of Wexford Place.

92. Wexford Place has used $217,447.49 of the funds from the WP PPP Loan for Eligible Expenses.

93. Without any legal right to do so, GECU has seized the remaining $337,752.51 of the funds from the WP PPP Loan and has exercised dominion and control over the remaining funds.

94. Wexford Place has demanded that WECU return the remaining funds from the WP PPP Loan.

95.     GECU has refused to return the remaining funds from the WP PPP Loan.

96.     Wexford Place has been damaged by GECU's actions in that it has not had access to the WCC PPP Loan funds and has not been able to utilize the funds for Eligible Expenses which will result in an obligation to repay the funds.

### THIRD CAUSE OF ACTION
### (Conversion of Social Row's PPP Loan)

97.     Plaintiffs incorporate the preceding paragraphs by reference as if fully rewritten herein.

98.     Social Row applied for and received the SR PPP Loan in the amount of $250,000. The funds from the SR PPP Loan were deposited into a GECU account.

99.     The funds from the SR PPP Loan are the legal property of Social Row.

100.    Social Row has used $183,756.15 of the proceeds of the SR PPP Loan for Eligible Expenses.

101.    Without any legal right to do so, GECU has seized the remaining $66,243.85 of the funds from the SR PPP Loan and has exercised dominion and control over the remaining funds.

102.    Social Row has demanded that WECU return the remaining funds from the SR PPP Loan.

103.    GECU has refused to return the remaining funds from the SR PPP Loan.

104.    Social Row has been damaged by GECU's actions in that it has not had access to the SR PPP Loan funds and have not been able to utilize the funds for Eligible Expenses which will result in an obligation to repay the funds.

## FOURTH CAUSE OF ACTION
## Unjust Enrichment

105.    Plaintiffs incorporate the preceding paragraphs by reference as if fully rewritten herein.

106.    Wexford Care Center applied for and received the WCC PPP Loan in the amount of $397,800. Wexford Care Center directed that the funds from the WCC PPP Loan be deposited into a GECU account.

107.    GECU was aware that the WCC PPP Loan funds were applied for and received by Wexford Care Center for the purposes of paying Eligible Expenses under the PPP.

108.    GECU was aware that Wexford Care Center needed funds from the WCC PPP Loan to pay Eligible Expenses and were necessary for the ongoing operations of Wexford Care Center.

109.    GECU has seized $260,073.14 of the funds from the WCC PPP Loan to use as an offset for debts owed by Premier and permitting GECU to retain the funds would be unjust and will damage Wexford Care Center.

110.    Wexford Place applied for and received the WP PPP Loan in the amount of $555,200. Wexford Place directed that the funds from the WP PPP Loan be deposited into a GECU account.

111.    GECU was aware that the WP PPP Loan funds were applied for and received by Wexford Place for the purposes of paying Eligible Expenses under the PPP.

112.    GECU was aware that Wexford Place needed funds from the WP PPP Loan to pay Eligible Expenses and were necessary for the ongoing operations of Wexford Place.

13

113. GECU has seized $337,752.51 of the funds from the WP PPP Loan to use as an offset for debts owed by Premier and permitting GECU to retain the funds would be unjust and would damage Wexford Place.

114. Social applied for and received the SR PPP Loan in the amount of $250,000. Social Row directed that the funds from the SR PPP Loan be deposited into a GECU account.

115. GECU was aware that the SR PPP Loan funds were applied for and received by Social Row for the purposes of paying Eligible Expenses under the PPP.

116. GECU was aware that Social Row needed funds from the SR PPP Loan to pay Eligible Expenses and were necessary for the ongoing operations of Social Row.

117. GECU has seized $66,243.85 of the funds from the SR PPP Loan to use as an offset for debts owed by Premier and permitting GECU to retain the funds would be unjust and will damage Social Row.

## FIFTH CAUSE OF ACTION
## Interference with Contractual Relations

118. Plaintiffs incorporate the preceding paragraphs by reference as if fully rewritten herein.

119. Wexford Care Center entered into a contract with the SBA for the WCC PPP Loan pursuant to which Wexford Care Center agreed to use the loan funds for Eligible Expenses.

120. As the lender responsible for processing the WCC PPP Application and WCC Note, GECU is aware of the applicable agreement.

121. By intentionally seizing a portion of the WCC PPP Loan funds as an offset for debts owed by Premier and refusing to provide such funds to Wexford Care Center, GECU is causing Wexford Care Center to breach the WCC PPP Application and WCC Note.

14

122.     GECU has no legal justification for seizing funds from the WCC PPP Loan as an offset for debts owed by Premier.

123.     Wexford Care Center has been damaged by GECU's interference in that it has not had access to the WCC PPP Loan funds and will not be able to utilize the funds for Eligible Expenses which will result in an obligation to repay the funds.

124.     Wexford Place entered into a contract with the SBA for the WP PPP Loan pursuant to which Wexford Place agreed to use the loan funds for Eligible Expenses.

125.     As the lender responsible for processing the WP PPP Application and WP Note, GECU is aware of the applicable agreement.

126.     By intentionally seizing a portion of the WP PPP Loan funds as an offset for debts owed by Premier and refusing to provide such funds to Wexford Place, GECU is causing Wexford Place to breach the WP PPP Application and WP Note.

127.     GECU has no legal justification for seizing funds from the WP PPP Loan as an offset for debts owed by Premier.

128.     Wexford Place has been damaged by GECU's interference in that it has not had access to the WP PPP Loan funds and will not be able to utilize the funds for Eligible Expenses which will result in an obligation to repay the funds.

129.     Social Row entered into a contract with the SBA for the SR PPP Loan pursuant to which Social Row agreed to use the loan funds for Eligible Expenses.

130.     As the lender responsible for processing the SR PPP Application and SR Note, GECU is aware of the applicable agreement.

131. By intentionally seizing a portion of the SR PPP Loan funds as an offset for debts owed by Premier and refusing to provide such funds to Social Row, GECU is causing Social Row to breach the SR PPP Application and SR Note.

132. GECU has no legal justification for seizing funds from the SR PPP Loan as an offset for debts owed by Premier.

133. Social Row has been damaged by GECU's interference in that it has not had access to the SR PPP Loan funds and will not be able to utilize the funds for Eligible Expenses which will result in an obligation to repay the funds.

## SIXTH CAUSE OF ACTION
### Constructive Trust

134. Plaintiffs incorporate the preceding paragraphs by reference as if fully rewritten herein.

135. Through its actions above, Defendant promised to distribute the PPP funds to the Plaintiffs and hold them in the GECU accounts so that they could be used for the purposes for which the PPP loans were made.

136. GECU's offset of the PPP funds was made before the Plaintiffs could use those funds for their indented purpose.

137. It would be inequitable and unjust to allow GECU to continue to withhold the unused PPP funds.

138. This court should order the PPP funds be held in constructive trust on behalf of the Plaintiffs to use or apply to expenses that the PPP funds were intended.

## SEVENTH CAUSE OF ACTION
### Request for Declaratory Relief

139.     Plaintiffs incorporate the preceding paragraphs by reference as if fully rewritten herein.

140.     Pursuant to R.C. 2721.01 et seq., this court has the authority to determinate and declare the legal rights of the parties.

141.     The WCC Note, WP Note and SR Note are legal documents.

142.     R.C. 1109.10(A) provides that the bank may withhold funds from another account absent a court order. Because GECU asserts that it is not obligated to turn over the loan proceeds it issued because Plaintiffs' former manager held the account, a court order declaring the funds should be released to their proper owners – Plaintiffs- is required.

143.     This Court should issue a declaration that the unused PPP funds belong to the Plaintiffs as pleaded above.

144.     In the alternative, this Court should issue a declaration that GECU's offset must be applied against the PPP loan amounts for the Plaintiffs.

**WHEREFORE,** Plaintiffs request entry of judgment in their favor against Defendant, and award the following relief:

As to the First Cause of Action, an award of compensatory damages against Defendant in the amount of $260,073.14, plus attorney's fees and the costs of the within proceeding;

As to the Second Cause of Action, an award of compensatory damages against Defendant in the amount of $217,447.49, plus attorney's fees and the costs of the within proceeding;

As to the Third Cause of Action, an award of compensatory damages against Defendant in the amount of $66,243.85, plus attorney's fees and the costs of the within proceeding;

As to the Fourth Cause of Action for unjust enrichment; an award of compensatory damages against Defendant as to each Plaintiff in excess of $25,000 and to be determined at trial;

As to the Fifth Cause of Action interference with contractual relations; an award of compensatory damages against Defendant as to each Plaintiff in excess of $25,000 and to be determined at trial;

As to the Sixth Cause of Action constructive trust; provision of equitable relief for each Plaintiff in the amount of PPP funds that Defendant is wrongfully withholding;

As to the Seventh Cause of Action declaratory relief; a declaration by this court that Plaintiffs are entitled to their PPP funds and that GECU must release those funds immediately, or, in the alternative, reduce any and all claimed debts arising from the PPP loans to Plaintiffs;

Any other relief the Court deems necessary and appropriate.

Respectfully submitted,

**ROLF GOFFMAN MARTIN LANG LLP**


 */s/ Christopher G. Kuhn*
Christopher G. Kuhn (0082822)
Joseph F. Petros III (0088363)
30100 Chagrin Boulevard, Suite 350
Cleveland, Ohio  44124-5705
(216) 514-1100 (Telephone)
(216) 682-2112 (Facsimile)
Kuhn@RolfLaw.com
Petros@RolfLaw.com
*Attorneys for Shelly Szarek-Skodny*

*And*

**LEVINSON LLP**

 */s/ Jeffrey M. Levinson*
Jeffrey M. Levinson (0046746)
55 Public Square, Suite 1750
Cleveland, Ohio 44113

18

(216) 514-4935 (Telephone)
(216) 532-2212 (Facsimile)
jml@jml-legal.com
*Attorneys for John T. Hillyer, Receiver*

19

1